# VINCENT *v.* STATE

[No. 260, September Term, 1958.]

*Decided June 9, 1959.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*William F. Mosner* for the appellant.

*Robert C. Murphy, Special Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General,* and *Frank H. Newell, 3rd, State's Attorney for Baltimore County,* on the brief, for the appellee.

234

PRESCOTT, J., delivered the opinion of the Court.

During the evening of September 22, 1958, at approximately 11:20 p.m., Henry F. Rinn, the attendant of a gasoline service station located at 5608 Southwestern Boulevard in Baltimore County, was held up and robbed by two men. Rinn testified that he was preparing to close the station for the night when he was approached by a man who requested a map. The man took the map and was standing on the edge of the Boulevard near the service station with his companion when Rinn approached them. After a short remark or two, one of the men produced a "gun" and he then knew what they were there for; so he took out his wallet and handed it to the man who had the "gun." The two men then tied his wrists behind him and made him lie down on the lavatory floor. Presuming that they had left, he shortly thereafter made his way to a telephone where he called the police. The police soon arrived and cut the shoe strings with which his wrists had been tied. Rinn said that the appellant was not either of the two men by whom he had been accosted. He identified a co-defendant, a certain Edgar E. Flury, as one of the men who had held him up (the second man apparently was named Trapnell, who was confined at Spring Grove awaiting possible trial). Trapnell was the one who had the "gun," and he took the sum of $54.00 from him. He could not tell the exact type of gun that Trapnell was holding because Trapnell used one of the maps to conceal it partially, and Rinn saw it only from the "muzzle end," but he heard it click. He also identified some shoe laces as being similar to those with which he had been tied.

Officer Edwin D. Shinnamon testified that Trapnell, Flury and the appellant had been apprehended in Raleigh, North Carolina, as a result of Flury telephoning and informing the police there of the offenses (they had committed several similar offenses in other states) that the three had committed, when he learned that Trapnell was planning to dispose of him. The police department in Raleigh immediately dispatched detectives to the location where Flury stated the automobile used by the three was. There they picked up the appellant who told them where the gun was located in the automobile. Shinnamon and another officer went to North Carolina for the purpose of bring-

ing all three back. While there, the appellant made two statements to the police, one oral and one written. As they are an important part of the state's evidence, they will be set forth in full—the first is the oral one; the second the written:

"Q. What did Vincent tell you in the North Carolina Police Station? A. Upon talking to Vincent, Vincent told us that his job, they rode by the gas station and looked the area over, and then he set in the car. He had a change of shirts in the automobile, and when the other two would return from the holdup, he would give them a change of shirts. Trapnell would usually drive. His job was to observe all traffic signs, all curves, any highway signs so they would stay within the limits of the law and wouldn't be picked up. *He was to have the car ready for the get away.*

"Q. And I will ask you did you ask him anything in connection with where he was at the time this offense occurred? A. Yes, sir. We talked to him about that, and he told us he was in an alley located off of a street which we found out to be Tom Day Boulevard. It is a little alley that runs to the rear of Argonne Avenue. He stayed in the automobile there."

\* \* \*

"I Lewis Howard Vincent, 840 W. 52nd Street, Chicago, Illinois, a white male, 19 years of age do hereby make the following statement: On September 22 between midnite and one o'clock, Trapnell planned it all. He looked at the gas station three to four time[s]. He pulled into an alley and walked up to the gas station with Flury. I sat in the car at the time. They meaning Trapnell and Flury came back running. I had the shirts ready for them to change. I sat in the car in all the hold up in all three states. What my job was to look out for highway patrolman city police and have their shirts ready at all times and look at all sign and to keep on the right route. *$54.00 was what they told me they got.* I got a $5.00 cut. Trapnell drove the car away from the hold up, while Flury

changed. Trapnell then told Flury to drive while he changed shirts. *Trapnell had a 32 Spanish automatic. Des Moines job Flury had a cap pistol he bought in a dime store."* (Italics supplied.)

Shinnamon also testified that upon their return to Baltimore County and being shown the prosecuting witness, Trapnell, in the presence of the appellant and Flury stated, "[t]hat is the man we held up." The defendant was tried, convicted and sentenced upon the charge of robbery with a dangerous or deadly weapon.

I

Upon this statement of facts, the defendant advances as his first reason why his conviction should be reversed a claim that the state failed to prove beyond a reasonable doubt that the "gun" used was either a deadly or dangerous weapon within the meaning of the statute. He admits it is unnecessary for the state to prove the gun or weapon used in committing the robbery was loaded, *Hayes v. State,* 211 Md. 111, 126 A. 2d 576, but maintains that in the case at bar, the state failed to establish that the instrument used was dangerous. He argues that the prosecuting witness' statement that the man had a gun —after a showing that the three men had a toy pistol and an automatic—is just as consistent with the conclusion that the two who held up Rinn were using the toy pistol as the automatic; and, if this be so, the defendant must be acquitted. He quotes the following statement from *Shelton v. State,* 198 Md. 405, 412, 84 A. 2d 76: "Before a verdict of guilty is justified, *the circumstances,* taken together, must be inconsistent with, or such as to exclude, every reasonable hypothesis or theory of innocence." (Italics added.) This sentence was added by Judge Delaplaine to what had been said in the memorandum on reargument in *Edwards v. State,* 198 Md. 132, 157, 158, 81 A. 2d 631, 83 A. 2d 578, relative to the *quantum* of proof necessary to sustain a conviction in a criminal case. It applies when guilt is based upon circumstantial evidence alone, as will be seen by a reading of the authorities cited by Judge Delaplaine: *Bullock v. Commonwealth,* 60 S. W. 2d 108 (Ky.) and 2 *Wharton, Criminal Evidence,* (11th Ed.), Sec. 922. See

also *Hochheimer, Criminal Law,* (1st Ed.), Sec. 259; 1 *Underhill, Criminal Evidence,* (5th Ed. Herrick), Sec. 17; 23 C.J.S. *Criminal Law,* Sec. 907 (c). In every criminal case, evidence, to meet the test of legal sufficiency, must show directly, or support a rational inference of, the facts required to be proved; and the facts must be established, or the inference supported, beyond a reasonable doubt[1] or to a moral certainty, or a reasonable doubt of an opposite fact must be created. *Edwards v. State, supra,* pp. 157, 158. And, when guilt is based solely upon circumstantial evidence, the circumstances, taken together, must be inconsistent with, or such as to exclude, every reasonable hypothesis or theory of innocence. *Shelton v. State, supra,* at page 412.

If the law were as contended by the appellant, the statute relating to robbery with a deadly or dangerous weapon would be of little effect. In order to avoid the chance of the higher penalty, a group of robbers would simply have to obtain one or more sham weapons, and then, when perpetrating the robbery with lethal ones, be certain that the victim could not ascertain whether the weapons used were real. But, we shall devote little additional time to this claim. The evidence clearly permitted the conclusion by the trier of facts that an actual pistol was used in committing the robbery. The evidence in this case was not circumstantial. The prosecuting witness repeated four or five times that his assailant had a gun. A real pistol was in the car and produced by the appellant when he was arrested in North Carolina. And finally, the appellant, in his written confession, stated, in relating the details of the robbery, "Trapnell had a 32 Spanish automatic." As pointed out by Judge Henderson for the Court in the *Hayes* case, *supra,* it is necessary under the statute for the state to show that the weapon used was, in reality, either dangerous (pistols are frequently used for bludgeoning) or deadly; but here there was ample evidence for the trier of facts to conclude that a real

---

1. For a very interesting and instructive article on the evolution and development of the rule as it now stands, see Judge May, *Some Rules of Evidence: Reasonable Doubt in Civil and Criminal Cases.* X American L. Rev. 642.

pistol was used and, as stated above, it was unnecessary for the state to establish that the pistol was loaded. It should be clear from what has been said above that we certainly cannot, upon the record, say the ruling of the trial court was "clearly erroneous." Rule 741 c.

## II

The appellant further contends that the statements made by him, oral and written, were not "confessions," but merely extrajudicial admissions of damaging facts, and, even though the *corpus delicti* was proven extrinsically, his conviction should not be permitted to stand. Stated another way, he apparently concedes (as well he may) the *corpus delicti* was proved without the aid of either of his statements; but claims that the statements were not confessions but merely admissions; hence, it was incumbent upon the state to show other incriminatory actions by him in order to sustain his conviction.

It is true, and this Court has recognized the fact, that there is a real, and not a fanciful, difference between a confession and an admission in a criminal case. In *Ford v. State,* 181 Md. 303, 307, 29 A. 2d 833 this Court quoted, with approval from the Montana case of *State v. Guie,* 186 P. 329, 331, as follows:

> "The distinction between a confession and an admission, as applied in criminal law, is not a technical refinement, but based upon the substantive differences of the character of the evidence educed from each. A confession is a direct acknowledgment of guilt on the part of the accused, and, by the very force of the definition, excludes an admission, which, of itself, as applied in criminal law, is a statement by the accused, direct or implied, of facts pertinent to the issue, and tending, in connection with proof of other facts, to prove his guilt, but of itself is insufficient to authorize a conviction."

See also *Delnegro v. State,* 198 Md. 80, 87, 81 A. 2d 241; *Zerwitz v. State,* 205 Md. 357, 361, 109 A. 2d 67; *Cooper v. State,* 220 Md. 183; 2 *Underhill, op. cit.,* Sec. 385. It is

obvious from the definition above given of an admission that admissions of one charged with a criminal offense, standing alone, are insufficient to sustain a conviction of guilt.

We have no difficulty with the contention. The statements were confessions, not admissions: They admitted facts which themselves (as distinguished from facts which permitted inferences to be drawn therefrom) disclosed that the appellant was guilty of robbery, the offense charged in the indictment, as a principal in the second degree. While he was not actually present at the immediate place of the perpetration of the robbery, he was in close proximity and contiguity thereto rendering aid and assistance to those who were personally performing the hold up. He stated that "he was to have the car ready for the get away," and it was part of his duties to have "a change of shirts" for his accomplices in order to avoid easy identification, as well as "to look out for highway patrolmen and city police." He was also a participant in the division of the proceeds of the robbery. Under the above circumstances, there can be no doubt that the defendant was a principal in the second degree to the robbery. It has long been held that whoever aids and abets the actual commission of a felony by some degree of assistance or encouragement, whether present at the place of perpetration or not, is a principal in the second degree.[1] Mr. Hochheimer, *op. cit.,* Sec. 32 states that, "[s]uch is the case of one keeping watch or guard at such convenient distance as to afford aid or encouragement to the actual perpetrator of a larceny or other felony." See also 1 R.C.L., *Accessories,* Sec. 13; 1 *Wharton, Criminal Law and Procedure,* (Anderson), Sec. 107; 22 C.J.S., *Criminal Law,* Sec. 86 (b). We think the defendant's confessions bring this case directly within the scope of this rule.

Having reached the conclusion that the appellant was a principal in the second degree, it becomes unnecessary to consider the other point raised by the appellant.

*Judgment affirmed, with costs.*

---

1. In Maryland, as in many other states, there is little practical difference between a principal in the first and second degree, and the defendant claims no benefit from such a shadowy distinction.