## BENNETT AND FLYNN *v*. STATE

[No. 107, September Term, 1964.]

*Decided December 17, 1964.*

The cause was submitted to PRESCOTT, HORNEY, MARBURY, SYBERT and OPPENHEIMER, JJ.

Submitted on brief by *Thomas J. Mooney, III,* for Anthony J. Bennett, Jr., one of the appellants.

Submitted on brief by *Michael F. Freedman* and *Stanley J. Schapiro* for Harvey E. Flynn, Jr., the other appellant.

Submitted on brief by *Thomas B. Finan, Attorney General, Stuart H. Rome, Assistant Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Julius Romano, Assistant State's Attorney,* for the appellee.

SYBERT, J., delivered the opinion of the Court.

In this case the State produced evidence that at about 2:45 A.M. on June 25, 1963, two men entered the taxicab of Lewis Harris in the 6200 block of Harford Road, one taking the front seat and the other the back seat. They gave a destination in downtown Baltimore. Shortly thereafter, Harris was told that the passenger in the rear desired to get out. As the taxicab was brought to a stop at the curb, the man on the rear seat reached

forward, grabbed the microphone from the dispatching radio on the dashboard, twisted the microphone cord around Harris's neck, and jerked his head backward over the top of the front seat. Both passengers demanded the driver's money, and, while he was held helpless by the cord, both took approximately $28 from his pockets. They then tore the microphone cord from the radio and fled on foot. Harris testified that the attack put him in fear; that the pressure of the cord dazed him and left him unable to speak; and that the cord left a mark on his throat.

After the attack Harris encountered a police patrol car and reported the robbery, giving detailed descriptions of his assailants, which included the facts that the man in the rear seat had a mustache and the man in the front seat was wearing a hat with an exceptionally narrow brim. Policemen in a second patrol car heard Harris's descriptions relayed over the police radio, saw the appellants, Bennett and Flynn, on the street some seven blocks from the scene of the robbery, and, as the descriptions fitted the two, arrested them. Flynn had a mustache, and Bennett was wearing a hat with a very narrow brim. They had over $55 in their possession. Harris identified the two in a line-up later that day and again at their trial.

Judge Harlan, sitting without a jury in the Criminal Court of Baltimore, convicted the appellants under the first count of an indictment charging robbery with a dangerous and deadly weapon, and, taking into account their prior criminal records, sentenced Flynn to ten years' and Bennett to twelve years' imprisonment. In this appeal they contend that the evidence was insufficient to support the convictions, and that the verdict was clearly erroneous because the microphone cord used in the robbery was not a dangerous or deadly weapon.

We shall consider the second contention first. Common law robbery is punishable by imprisonment for from three to ten years under Code (1957), Art. 27, sec. 486. On the other hand, sec. 488 prescribes a sentence of not more than twenty years for robbery or attempt to rob "with a dangerous or deadly weapon". In 3 *Wharton's Criminal Law and Procedure* (Anderson's ed., 1957), sec. 961, p. 111, it is said that a weapon "is generally defined as anything used or designed to be used in destroying, defeating, or injuring an enemy, or as an instru-

ment of offensive or defensive combat". In discussing the types of weapons which come within the statutory condemnation of dangerous weapons, the author states (*ibid.*, at p. 113) :

> "The character of a weapon as a deadly or dangerous weapon is not necessarily determined by its design, construction, or purpose. A weapon may be deadly or dangerous although not especially designed or constructed for offensive or defensive purposes or for the destruction of life or the infliction of bodily injury. Accordingly, when a weapon is in fact used in such a way as is likely to produce death or grievous bodily harm it may be properly regarded as a dangerous or deadly weapon. * * *"

See also 77 C.J.S., *Robbery,* sec. 28, p. 467 ; 92 A.L.R. 2d 635.

In *State v. Calhoun,* 34 N. W. 194 (Iowa 1887), where an indictment for robbery charged that the defendant was armed with a dangerous weapon, the only evidence on that point was that he had a piece of cord which he used to tie the hands and feet of the person robbed. The Supreme Court of Iowa held that the jury were properly instructed that it was for them to decide whether the cord was a "dangerous weapon", stating (at p. 196), "A cord is often used as an instrument by robbers to kill or disable their victim ; when so used it is properly called a weapon." It has likewise been held, or triers of fact have been permitted to find, that various instruments, ordinarily innocuous, have been used in such manner as to constitute dangerous or deadly weapons within the meaning of statutes relating to armed robbery. See, for example, *Jones v. Commonwealth,* 196 S. W. 2d 972 (Ky. 1946), (a chain swung at the victim) ; *Goss v. State,* 7 S. E. 2d 87 (Ga. App. 1940), (a shoe used to kick the head of a victim lying on the ground), and see also *People v. Wood,* 13 Cal. Rptr. 339 (1961) ; *Tatum v. United States,* 110 F. 2d 555 (D. C. Cir. 1940), (lye thrown on victim) ; *Williamson v. State,* 111 So. 124, 53 A.L.R. 250 (Fla. 1926), (an automobile) and cf. *Faulcon v. State,* 211 Md. 249, 259-260, 126 A. 2d 858 (1956) ; *Blakewood v. State,* 25 S. E. 2d 643 (Ga. 1943), (alcohol thrown on a person and ignited).

In Maryland, we held recently that a starter's pistol, inca-

pable of discharging a projectile, was a dangerous weapon within the meaning of Art. 27, sec. 488, *supra. Jackson v. State,* 231 Md. 591, 191 A. 2d 432 (1963), and see cases cited therein. We have also held that an unloaded pistol was a dangerous weapon. *Hayes v. State,* 211 Md. 111, 126 A. 2d 576 (1956). The microphone cord in the instant case was used much as the garrote has been used in some foreign countries. Black's Law Dictionary (4th ed., 1951), at p. 810, defines garroting as "* * * any form of strangling resorted to to overcome resistance or induce unconsciousness, especially as a concomitant to highway robbery." A garrote has been defined as "an implement (as a length of piano wire with wooden handles) used for this purpose [garroting]", Webster's Third New International Dictionary (1961), p. 937. Here, the taxicab driver was put in fear by the cord twisted about his neck; the cord was an effective instrument of strangulation; indeed, even when used only to restrain the driver, it produced dazing, a loss of speech, and bruising. The finding by Judge Harlan that the manner of use of the cord in the robbery constituted it a dangerous weapon was fully supported by the evidence.

We find no merit in the appellants' remaining contention that the evidence was insufficient to sustain the trial court's verdicts of guilty. The appellants base their argument on this point upon the fact that, at the trial, the taxicab driver was somewhat hazy as to some details of the descriptions of his attackers which he gave to the police on the night of the robbery, and upon the further fact that although the driver testified that $3.00 or $4.00 of the money taken from him was in silver, no change was found upon one of the appellants and the other had less than $1.00 in change at the time of their arrest. But Judge Harlan found that the descriptions given to the police shortly after the offense fitted the appellants closely, and stated that he was impressed by the identification of the appellants by the driver "without question", both in the lineup and in court. As to the silver, the judge pointed out that the driver could have been mistaken as to the amount he had, or that it could have been thrown away by the appellants. In any event, we have held many times that identification by a single eye-witness, if believed by the trier of facts, is sufficient to support a conviction. *Coates v.*

*State,* 232 Md. 72, 191 A. 2d 579 (1963) ; *Thornton v. State,* 232 Md. 542, 194 A. 2d 617 (1963), and cases cited.

*Judgments affirmed.*