GEORGE D. HOLLE, THE YOUNGER
*v.* STATE OF MARYLAND

[No. 934, September Term, 1974.]

*Decided May 9, 1975.*

The cause was argued before ORTH, C. J. and THOMPSON and MOYLAN, JJ.

*Stephen L. Miles* for appellant.

*Leroy Handwerger, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City* and *Howard Grossfeld, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ORTH, C. J., delivered the opinion of the Court.

On 22 November 1974 in the Criminal Court of Baltimore, GEORGE D. HOLLE, the younger, was tried at a bench trial under indictment No. 17401997 presenting by the first count that on 24 June 1974 he did steal $712 of the monies of St. Matthews Roman Catholic Congregation, Inc. and by the second count that he did receive the monies. He was found guilty generally and a general sentence of five years was imposed and suspended. He was placed under supervised probation for 3 years, and ordered to pay the costs. He appealed. He contends that the trial court committed reversible error in admitting into evidence the property seized from him. We affirm the judgment.

## STATEMENT OF THE CASE

When the indictment came on for trial Holle pleaded not guilty. He elected to be tried by the court and expressly consented that the trial was to proceed on an agreed statement of facts. The transcript of the proceedings reads:

"MR. GROSSFELD [Assistant State's Attorney]: Your Honor, the agreed statement of facts, agreed to by Counsel for the Defense and the State, are as follows: the State would have first called Reverend O'Dwyer, who is present. What is the proper title?

THE REVEREND O'DWYER: Father.

MR. GROSSFELD: As you can see, he is in the second row. Please be seated. He would testify that he was affiliated with the St. Matthew's Roman Congregation, Incorporated, in the State of Maryland, and he was affiliated with this particular organization on June 23, 1974; that on June 6, 1974, he had reason to believe that there was a shortage occurring in the collections on Sundays and that he had reason to believe that the person taking the particular count was the Defendant, George Holle, who he would then identify as seated at the trial table today with Counsel. Father O'Dwyer would further testify that he had occasion to meet with the members of the Baltimore City Police Department on June 16, 1974, and discussed this particular matter and at that time they agreed to take a count of the collection for June 23, 1974.

On that particular day, after the church services, approximately two o'clock in the afternoon, on the 23rd, Detective O'Connell, who is present today, along with Father O'Dwyer, counted the particular sum of money. Excuse me, Your Honor.

(Mr. Grossfeld referred to a file.)

MR. GROSSFELD: They found that the money

was $463 in singles, eight five dollar bills, two ten dollar bills, thirty-seven dollars in singles from the poor box — excuse me, Your Honor.

(Mr. Grossfeld referred to a file.)

MR. GROSSFELD: Your Honor, the total amount would be $564.00. This was not including the envelope money. The Father would explain that the envelopes were always taken where people in the congregation would deposit money in the envelopes and it would be sealed and this would be done for tax purposes. This particular money was undisturbed.

Arrangements between the Father and the detective were made and the loose money, the $564 was stamped with an infra-red light which reflected BCPD, representing the Baltimore City Police Department. After counting the money, it was returned to the safe and the detective at that time marked the safe to assure that it was not disturbed.

On the following day, all the people who were counters came in that particular room. The Defendant was one of them. At approximately 3:30, Father O'Dwyer returned to the counting room and asked whether the total was correct, at which time he was informed that the total was incorrect and that there was a shortage at that time. He walked out and got the members of the Baltimore City Police Department, who at that time returned and at that time requested if they could search everyone present. All agreed except the Defendant. At that time, the officers arrested the Defendant and searched him and found on his possession $712 in currency.

Your Honor, at that time, they took the money out, laid it on the table and turned off the light and

applied a fluorescent light and all the bills except one lit up with the code.[1]

The State would have next called Detective O'Connell who is present. Will you please stand?

(Detective O'Connell stood up.)

MR. GROSSFELD: As you can see, he is in the first row. Thank you. You may be seated.

He would have testified that he had a meeting with the Father; that he had arranged to mark all the bills on June 23; that he had occasion to look into the background of the Defendant and was unable to find anything — any income coming in to the Defendant. He also inquired into another charge that the Defendant was counting for and found that there was a shortage there and that he on June 24th made arrangements with Father O'Dwyer to be present when the counting was taking place. He would further testify that he was told by Father O'Dwyer that there was a shortage.

On this particular day, he came into the counting room where the Defendant was present. He asked if he could search everyone and everyone agreed except the Defendant. On probable cause, he arrested the Defendant and when he reached in the Defendant's pocket, he found an abnormally long pocket going down past the Defendant's knee and crammed in there was over $700. When he took out the money, he found it all to be coded as he did earlier that particular day.

He would also testify that the funds collected are present today and are sealed in this envelope (indicating) that the State would offer as State's Exhibit Number 1.

---

1. We note that the total stated cannot be reconciled with the State's previous statements regarding the money. Nor is it explained how $564 could be marked and thereafter all except one bill in $712 showed the markings.

MR. MILES [Defense Counsel]: For the record, I would object.

THE COURT: Objection overruled.

MR. GROSSFELD: The next witness the State would have called would be John Savage (spelled phonetically). He is present. He is in the second row.

He would testify that he is a member of that particular congregation and for the last three years he has been counting coins and been counting the collections along with the Defendant, who he would identify as being seated at the trial table today. He would testify that on June 23, 1974, he was present when the Father and Detective made the count. Again, he was present on the 24th when the count was taken and a shortage did occur. He would explain that there were five or six people who came in to count. All members sorted and this was the only person who actually did the actual counting and he would testify that would be the Defendant.

He would further testify that photographs of the particular counting room, offered as State's Exhibit Number 2, and Your Honor can see from the photograph that the table is a 'T' shape.

> (A photograph was marked and introduced into evidence as State's Exhibit Number 2.)

MR. GROSSFELD: All members of the counting team were at one end. The Defendant was at the other end. Excuse me, Your Honor.

> (Mr. Grossfeld looked through some photographs during which time Detective O'Connell handed Mr. Grossfeld more photographs.)

MR. GROSSFELD: Your Honor, the State would next offer a photograph which the witnesses would

testify is a re-enactment of the way the individuals count. I would offer that as State's Exhibit Number 3.

> (A photograph was marked and introduced into evidence as State's Exhibit Number 3.)

MR. GROSSFELD: As you can see, Your Honor, there is a gentleman at the closest portion of the photograph with a basket in front of him. That is the position that the Defendant normally took. The witness would also testify that the Defendant always had the basket in front of him when he was counting.

The witness would further testify that he was present when the police came in with Father O'Dwyer and requested everyone if they could search them and everyone agreed except the Defendant. The Defendant was placed under arrest, at which time the Defendant was then searched and recovered from him was the $712 which was marked. The lights were turned off and the symbols showed up.

That would be the State's case in chief."

Holle moved for judgment of acquittal. It was denied. He then expressly (1) chose not to testify; (2) agreed with his counsel's statement that "we have no witnesses to call in your behalf with regard to the facts of the case"; (3) declared he understood that the court "will decide your guilt or innocence at this point based on the statement of facts as given by the State's Attorney," which were "essentially correct" as set out. Whereupon defense counsel said, "That would be all, Your Honor. I will wait for your ruling." The court asked if the motion for judgment of acquittal was renewed, defense counsel said it was, and the court denied it. The court said: "Based on the evidence as submitted to the Court by an agreed statement of facts, the Court finds you guilty as charged."

## THE LAW

### I

It is not always necessary that tangible evidence be physically admitted at a trial. For example, if a felon commits a robbery with a deadly weapon, disposes of it before being apprehended, and it is not recovered, the *corpus delicti* of the crime may be proved on the testimony of the victim or an eyewitness that the robber used such a weapon. Even when evidence is available it need not be physically offered. Thus, the grand larceny of an automobile may be established merely on competent testimony describing the stolen vehicle without actually producing the automobile before the trier of fact. In such instances, the description of the tangible evidence is the equivalent of the physical production of the evidence, and the failure to produce it goes at most to the weight of the evidence and the credibility of the witness describing it. In other words, "[i]t is not necessary to produce, as distinguished from prove, the object of the crime." 1 *Underhill's Criminal Evidence*, § 35, at 62 (6th ed. 1973). See *Foster v. United States*, 212 F. 2d 249 (D.C. Cir. 1954).

### II

After indictment the admission of property may be challenged by a motion to suppress or exclude it on the ground that it was obtained by an unlawful search or seizure. The motion may be filed before trial or at trial in the court having jurisdiction. Maryland Rule 729, § b 1. Such a motion is not required, however, and the failure to file it shall not constitute a waiver of a defendant's right to object at the trial to the introduction of such evidence. Rule 729, § c. An objection to evidence, as distinguished from a motion to suppress or exclude it, is generally governed by Rule 522, made applicable to criminal causes by Rule 725, § f. Although Rule 729, § f provides that if such a motion or objection is denied the matter shall be preserved on appeal "even though *no further objection* was made to the introduction of such evidence at the trial" (emphasis added),

Rule 522, § d 2 requires that "Every objection to the admissibility of evidence shall be made at the time when such evidence is offered, or as soon thereafter as the objection to its admissibility shall have become apparent, otherwise the objection shall be treated as waived." [2]

## DECISION

Evidence that the marked money, the object of the crime, was recovered from Holle's person was placed before the trier of fact here by the agreed statement and without any challenge by objection or by motion to suppress or exclude, or otherwise. It was not until after this unchallenged evidence was received, and the State for some reason offered the money itself, that Holle interposed a bare objection "for the record". We think it came too late to preserve the question of the admissibility of the money no matter what the grounds of the objection may have been. Proof of the object of the crime, that is the money which was stolen, and where it was obtained, having come in without objection, there was, at that point in the trial, evidence sufficient in law to prove both the *corpus delicti* of grand larceny and Holle's criminal agency. It was not necessary to produce the tangible evidence itself to prove the State's case. The State's burden had already been met. It made no difference thereafter whether the court admitted the actual money or excluded it, and indeed, as we have indicated, the State had no need even to offer it. Holle agreed to the statement of facts and did not dispute the assertion contained therein that he was arrested "on probable cause". He objected only to the introduction of the actual money after all necessary proof regarding it had been received. Objection to the admission of the money was waived because not timely

---

2. By Rule 522, § d 1, it is not necessary to state the grounds for objections to evidence unless requested by the court. But inherent in Rule 729 is that a motion to suppress or exclude evidence and an objection to its admission indicate that it is on the ground "that it was obtained by an unlawful search or seizure", §§ b 1, b 2, c and e. Statement of the ground for the challenge is also necessary to comply with the procedure established to determine the validity of the search or seizure. See Cleveland v. State, 8 Md. App. 204, *cert. denied,* 257 Md. 732; Winebrenner v. State, 6 Md. App. 440.

made. We expressly reject, for reasons manifest in this opinion, Holle's suggestion at oral argument that the proper time for him to object was upon the production of the money rather than upon the proof of it which preceded the proffer of the money itself.

## THE JUDGMENT

The general verdict returned carried with it a conviction of both larceny of the money as charged in the first count and cne receiving of it as charged in the second count. These verdicts are inconsistent. Chief Judge Murphy said for this Court in *Edwards v. State*, 7 Md. App. 108, 114:

> "A general verdict of guilty on two inconsistent counts is, of course, defective and the defendant has the right to require the trier of facts to specify on which of the counts he is guilty. The right may, however, be waived where, as here, the matter was not raised below or on appeal. See *Fladung v. State*, 4 Md. App. 664."

The matter was so waived in the case *sub judice*.

*Judgment affirmed; costs to be paid by appellant.*