552 A.2d 872

**Donald BROOKS**

v.

**STATE of Maryland.**

**No. 60, Sept. Term, 1988.**

Court of Appeals of Maryland.

Feb. 3, 1989.

Gary S. Offutt, Asst. Public Defender (Alan H. Murrell, Public Defender, both on brief) Baltimore, for petitioner.

Beverly Peyton Griffith, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief) Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

ADKINS, Judge.

█ We shall here hold that the evidence in this case was insufficient to establish that a lightweight toy plastic pistol was a deadly or a dangerous weapon within the meaning of Maryland Code (1987 Repl.Vol.) Article 27, · § 488.[1] The framework within which we reach this conclusion is straightforward.

On 22 December 1986 a Fotomat store in Baltimore City was robbed. The store clerk testified that the robber pulled up his shirt and showed her "a gun" tucked into the waistband of his trousers. She gave him money from the cash register because she believed "[t]hat if I didn't give him what he wanted, he would have shot me."

On 11 February 1987 petitioner Donald Brooks was arrested and charged with the robbery. At the time of the arrest, the police seized from Brooks's jacket a lightweight toy plastic automatic pistol. Later that day Brooks confessed to the Fotomat robbery and to the use of the toy gun during it. He explained that he always used the toy gun in his robbery activities "because he didn't want to hurt anybody."

Brooks went to trial in the Circuit Court for Baltimore City (Prevas, J., presiding); he was charged with various

---

1. Article 27, § 488 authorizes imprisonment for not more than 20 years if a person is "convicted of the crime of robbery ... with a dangerous or deadly weapon...."

offenses, including robbery with a dangerous or deadly weapon, simple or common law robbery (Art. 27, § 486), and use of a handgun in the crime of violence (Art. 27, § 36B(d) (Supp.1988)). The State placed in evidence his confession as well as the toy gun, which the Fotomat clerk said looked "the same" as the one the robber had displayed. In response to a question by the court, the clerk confirmed that the toy gun in evidence was in no way different from the one she had seen the night of the robbery.

Despite defense counsel's argument that the plastic pistol was not a deadly or dangerous weapon, the court overruled Brooks's motion for judgment of acquittal on that count. The State dropped the use of a handgun charge; the armed robbery and common law robbery counts were submitted to the jury, which convicted Brooks of the former.[2] The court imposed a 20-year sentence. In an unreported opinion, the Court of Special Appeals affirmed. *Brooks v. State*, No. 1239, Sept. Term, 1987 (Md.App. filed 18 Apr. 1988).

Brooks now contends that the evidence was insufficient to convict him of armed robbery because the only evidence of a weapon used in the robbery was the toy gun. He insists that a lightweight toy plastic gun is neither dangerous nor deadly. Additionally, he asserts that the court's instructions were plain error because they permitted the jury to convict him of armed robbery with a toy gun if they found the victim believed the weapon was real and was intimidated thereby. He also raises a question about improper closing argument. As we have indicated, we are in essential agreement with Brooks on the first issue and shall

---

**2.** The trial judge correctly instructed the jury that if it convicted Brooks of armed robbery, it need not consider common law robbery. Sections 486 and 488 of Article 27 "do not create separate statutory offenses but merely fix the penalties for the *one* crime of robbery." *Whack v. State*, 288 Md. 137, 140, 416 A.2d 265, 266 (1980), *appeal dismissed*, 450 U.S. 990, 101 S.Ct. 1688, 68 L.Ed.2d 189 (1981) [emphasis added]. Thus, when a defendant is convicted of both, common law robbery would merge into armed robbery. *See generally Bynum v. State*, 277 Md. 703, 707, 357 A.2d 339, 341, *cert. denied*, 429 U.S. 899, 97 S.Ct. 264, 50 L.Ed.2d 183 (1976).

reverse the Court of Special Appeals on that ground. As we explain our reasons for doing so, it will become clear that the court's instructions were incorrect. In view of our disposition of the case, we need not consider the third issue.

## I.

Before we turn to that explanation, however, we must dispose of the State's argument that we need not even address the toy gun question because the jury could have decided, as a matter of fact, that the instrumentality used in the robbery was a real handgun, not the toy that the State introduced into evidence. This argument was accepted by the Court of Special Appeals, but we do not believe we can avoid so facilely the important issue before us.

Although the trial court did suggest that the jury might find that a real gun was used, the thrust of its instructions on the dangerous or deadly weapon issue was that a toy gun could qualify as such if the victim believed it to be genuine and thus was intimidated by it. But on the facts of this case, any jury finding that the gun was real would have been based on nothing more than speculation and thus improper. *See McQuiggan v. Boy Scouts of America*, 73 Md.App. 705, 712, 536 A.2d 137, 140 (1988). In the trial court, the State, defense, and judge all proceeded on the unquestioned assumption that the toy gun was the "dangerous or deadly weapon" used by Brooks.

In a motion *in limine*, Brooks asked the court to suppress the toy gun. The basis for the motion was that since the robbery had occurred in December, but the gun was not seized until the following February, there was insufficient connection between the toy subsequently in Brooks's possession and the instrument used in the robbery to show that the two were the same. The State countered this by means of Brooks's oral confession, in which he admitted using that very toy gun in the Fotomat robbery. As we have seen, both the toy gun and the confession were before the jury. Moreover, during argument on the motion for judgment of acquittal, both sides assumed that the toy gun was the

instrument used in the robbery. In point of fact, the State made frequent references to the "toy handgun" and its connection with Brooks (via the seizure of the gun and the subsequent confession) in an effort to overcome the principal defense, which was insufficient identification of Brooks as the culprit.

In short, the State proved its case by persuading the jury that the toy gun was the instrument used in the robbery and that it was a dangerous or deadly weapon. It is too late for it now to hypothesize the existence of something other than a toy handgun.[3]

## II.

■ Having established that this robbery must be viewed as one that was committed with a toy gun, we now proceed to explain why it does not qualify as a "dangerous or deadly weapon." The controversy swirls about two approaches to the interpretation of this phrase. One, used by the trial

---

3. We have before us a case in which the State has chosen to prove the commission of a crime with a particular instrument. In many cases, of course, the instrument—be it gun or something else—is not recovered, so is never placed in evidence. However, "the *corpus delicti* of the crime may be proved on the testimony of the victim or an eyewitness that the robber used ... a weapon." *Holle v. State,* 26 Md.App. 267, 274, 337 A.2d 163, 166, *cert. denied,* 275 Md. 750 (1975). In such a case, whether the instrument is dangerous or deadly must depend on how witnesses describe it. If it is described as a gun without further qualification, there is a permissible inference that it is a real and operable gun. *See State v. Allen,* 317 N.C. 119, 122, 343 S.E.2d 893, 895–896 (1986); *see also Miller v. State,* 231 Md. 158, 160–161, 189 A.2d 118, 119 (1963) (sufficient testimonial evidence to permit judge, sitting as fact-finder, to conclude that gun was used in robbery); *York v. State,* 56 Md.App. 222, 230 n. 2, 467 A.2d 552, 556 n. 2 (1983), *cert. denied,* 299 Md. 137, 472 A.2d 1000 (1984) (inference permitted that a loaded gun is operable); *Couplin v. State,* 37 Md.App. 567, 575–578, 378 A.2d 197, 202–203 (1977), *cert. denied,* 281 Md. 735 (1978) (when gun is unrecovered, testimony of victim is sufficient to allow jury to consider whether a gun was used to perpetrate robbery); *Bell v. State,* 5 Md.App. 276, 279, 246 A.2d 286, 287–288 (1968) (knife not produced at trial; testimony of victim sufficient to establish existence of knife used during robbery); *State v. Tasco,* 292 S.C. 270, 271–272, 356 S.E.2d 117, 117–118 (1987) (when gun is unrecovered, its existence is a factual determination to be made by the jury).

court and now championed by the State, is subjective: a weapon is deadly or dangerous if the victim believes it to be of that character and is, therefore, intimidated by its use. The other, espoused by Brooks, is objective: to be deadly or dangerous a weapon must be inherently of that character or must be used or useable in a manner that gives it that character. Our cases are somewhat unclear as to the test to be used.[4] A summary of these cases demonstrates the problem.

In *Hayes v. State*, 211 Md. 111, 126 A.2d 576 (1956), we held that an unloaded pistol could be a dangerous or deadly weapon. Judge Henderson, for the Court, first noted that "[a] dangerous weapon is one likely to produce death or great bodily injury." *Hayes*, 211 Md. at 114, 126 A.2d at 577. This reasoning follows the objective analysis. We recognized that the unloaded pistol used by Hayes could be used as a bludgeon and could be loaded, "under some circumstances within a matter of seconds," thus making it objectively dangerous or deadly. *Id.*

The opinion went on, however, to offer a subjective analysis when it argued that the Maryland armed robbery statute

> predicates the greater penalty attached to the use of a dangerous or deadly weapon upon the means employed in the intimidation. So long as there is an intent to rob by that means, it is unnecessary to find an intent or ability to execute the implied threat in the event of resistance.

*Id.* at 115, 126 A.2d at 578. Thus, it appears there were two alternative rationales for the holding in *Hayes*—the "bludgeon" or "readily dangerous" reasoning and the "intimi-

---

**4.** Seldom do we find a case like *Wright v. State*, 72 Md.App. 215, 528 A.2d 498, *cert. denied*, 311 Md. 287, 533 A.2d 1308 (1987). There, the facts practically compelled the result Brooks seeks here. The instrument used in the robbery attempt was a toy plastic gun. *Wright*, 72 Md.App. at 217, 528 A.2d at 499. The victim did not believe it was a real weapon and was not intimidated by it. *Id.* at 220–221, 528 A.2d at 501. Under both the subjective and objective approaches, the instrument was neither dangerous nor deadly as a matter of law, and the Court of Special Appeals so held. *Id.* at 223, 528 A.2d at 502.

dation" reasoning. The latter is consistent with the State's subjective approach in this case; the former with Brooks's objective position.

In *Vincent v. State,* 220 Md. 232, 151 A.2d 898 (1959), several robbers had in their possession an authentic automatic pistol and a cap gun. *Vincent,* 220 Md. at 236, 151 A.2d at 901. The victim testified only that they had used "a gun." *Id.* at 234, 151 A.2d at 900. Vincent argued that the State had failed to establish robbery with a dangerous or deadly weapon because it had failed to establish that the "gun" was the automatic, rather than the cap gun. *Id.* at 236, 151 A.2d at 901. In rejecting that contention, the Court observed that "[t]he evidence clearly permitted the conclusion by the trier of facts that an actual pistol was used in committing the robbery." *Id.* at 237, 151 A.2d at 901–902. Summarizing the evidence about the automatic pistol, the Court went on to explain that, "[a]s pointed out by Judge Henderson for the Court in the *Hayes* case, *supra,* it is necessary under the statute for the State to show that the weapon used was, in reality, either dangerous (pistols are frequently used for bludgeoning) or deadly; but here there was ample evidence for the trier of facts to conclude that a real pistol was used and, as stated above, it was unnecessary for the State to establish that the pistol was loaded." *Id.* at 237–238, 151 A.2d at 902.

In *Davis v. State,* 225 Md. 45, 46, 168 A.2d 884, 885 (1961), we again made reference to the subjective approach in noting that "[i]t is enough if it is shown ... that the gun was used in a threatening fashion" [citing *Hayes, supra* ]. But it is plain that the evidence in *Davis* was more than sufficient to support a finding that the weapon used was a real gun—thus, objectively dangerous. *Id.*

Next in this progression of cases is *Jackson v. State,* 231 Md. 591, 191 A.2d 432 (1963), which the State claims is dispositive in the instant case. Jackson held up two taxi cab drivers, using a .22 caliber starter's pistol that was incapable of firing anything but blank cartridges. *Jackson,* 231 Md. at 593, 191 A.2d at 433. The gun looked just like a

real one, however, and the cab drivers testified that "each believed the instrument to be an authentic pistol and was put in fear by it, and, thus coerced...." *Id.* Jackson was convicted of armed robbery. *Id.* This Court affirmed. In the course of doing so, we declined Jackson's invitation to "adopt the rule of *Cooper v. State,* [201 Tenn. 149,] 297 S.W.2d 75 ... (1956), where the [Supreme Court of Tennessee] held that a toy gun was not a dangerous or deadly weapon within the meaning of an armed robbery statute similar to ours." *Id.* at 595, 191 A.2d at 434. Instead, our predecessors relied chiefly on *Hayes, supra,* which was described as "[m]aking it perfectly clear that guilt under the Maryland statute is predicated upon a finding of intent to rob by means of *intimidation* produced by the use of a weapon, coupled with the *apparent* ability to execute the implied threat to use the weapon if resistance is offered...." *Id.* at 594, 191 A.2d at 433 [emphasis in original]. The *Jackson* court also observed that *Hayes* had "noted that pistols are frequently used as bludgeons in robberies." *Id.* We held the starter's pistol to be a dangerous weapon. *Id.* at 595, 191 A.2d at 434.

The device in question in *Bennett and Flynn v. State,* 237 Md. 212, 205 A.2d 393 (1964), was not a gun of any sort: toy, starter's pistol, or genuine but inoperable firearm. It was the microphone cord of a taxicab's radio, which robbers seized and used as a garrote to immobilize the cab driver while they took his money. *Bennett,* 237 Md. at 213–214, 205 A.2d at 393. The culprits were convicted of armed robbery, and again, this Court affirmed. Judge Sybert, who had written the opinion in *Jackson,* began by defining the nature of a weapon, for it was clear that a microphone cord ordinarily would not fall into that category. Quoting 3 *Wharton's Criminal Law and Procedure* § 961, at 111 (Anderson's ed. 1957), he described a weapon as " 'anything used or designed to be used in destroying, defeating, or injuring an enemy, or as an instrument of offensive or defensive combat.' " *Bennett,* 237 Md. at 214–215, 205

A.2d at 394. Nevertheless, Judge Sybert went on to quote from page 113 of Wharton's treatise:

"The character of a weapon as a deadly or dangerous weapon is not necessarily determined by its design, construction, or purpose. A weapon may be deadly or dangerous although not especially designed for offensive or defensive purposes or for the destruction of life or the infliction of bodily injury. Accordingly, when a weapon is in fact used in such a way as is likely to produce death or grievous bodily harm it may properly be regarded as a dangerous or deadly weapon."

*Id.* at 215, 205 A.2d at 394.

The quoted language appears to rely on an objective test: the way in which the device is, in fact, used. This reasoning is further developed when Judge Sybert explains that "[t]he microphone cord in the instant case was used much as the garrote has been used in some foreign countries." *Id.* at 216, 205 A.2d at 395. Then the focus seems to become more diffuse, mingling both objective and subjective elements: "Here, the taxicab driver was put in fear by the cord twisted about his neck; the cord was an effective instrument of strangulation. . . ." *Id.* But the conclusion returns to objectivity: "The finding by [the trial judge] that the manner of use of the cord constituted it a dangerous weapon was fully supported by the evidence." *Id.*

Yet in *Myers v. State,* 237 Md. 632, 206 A.2d 704 (1965), decided less than two months after *Bennett,* the emphasis seems to be on subjectivity. The weapon in *Myers* was a fully loaded but inoperable handgun. *Myers,* 237 Md. at 634, 206 A.2d at 705. It was a deadly weapon because "there was intent to rob by means of intimidation produced by the use of a weapon, coupled with the apparent ability to use the weapon if resistance was offered." *Id.* And in *Whack v. State,* 288 Md. 137, 145, 416 A.2d 265, 269 (1980), *appeal dismissed,* 450 U.S. 990, 101 S.Ct. 1688, 68 L.Ed.2d 189 (1981), we made passing references to both the *Hayes* subjective test ("devices used for intimidation regardless of an ability to execute the implied threat") and the *Bennett*

objective test. Recent cases from the Court of Special Appeals also waver between the objective and subjective tests. *See, e.g., Grant v. State,* 65 Md.App. 547, 501 A.2d 475 (1985), *cert. denied,* 306 Md. 70, 507 A.2d 184 (1986); *Battle v. State,* 65 Md.App. 38, 499 A.2d 200 (1985), *cert. denied,* 305 Md. 243, 503 A.2d 252 (1986).

The Maryland case law, then, gives us somewhat imprecise marching orders as to how we should go about determining whether a particular instrument is a deadly or dangerous weapon for purposes of § 488. And we note that decisions in those jurisdictions with aggravated robbery statutes similar to § 488 are far from uniform.[5] *See*

---

**5.** There appear to be four general types of aggravated robbery statutes. One type adopts the objective approach, by defining objectively. dangerous weapons—*i.e.*, instruments which may cause death or serious bodily injury—as qualifying as deadly or dangerous weapons. *See, e.g.,* Haw.Rev.Stat. § 708–840(1)(b), (2) (Repl.Vol.1985); Ind.Code Ann. §§ 35–42–5–1, 35–41–1–8 (Burns Repl.Vol.1985); Iowa Code Ann. §§ 711.2, 702.7 (West 1979); N.M.Stat.Ann. §§ 30–16–2, 30–1–12 B (1984); Ohio Rev.Code. Ann. §§ 2911.01(A)(1), 2923.11(A), (K) (Anderson 1987 & Supp.1987); Tex.Penal Code Ann. §§ 29.03(a)(2), 1.07(a)(11) (Vernon 1974).

Other statutes incorporate the subjective approach. They are violated if a defendant uses a simulated weapon, represents that he has a weapon, or if a victim or other witness reasonably believes that the assailant is armed. *See, e.g.,* Alaska Stat. § 11.41.500(a) (Cum.Supp. 1988); Ariz.Rev.Stat.Ann. § 13–1903 A (Supp.1988); Conn.Gen.Stat. § 53a–135 (1987); Del.Code Ann. tit. 11, § 832(a)(2), (3) (Repl.Vol. 1987); Ga.Code Ann. § 16–8–41(a) (1988); La.Rev.Stat.Ann. § 14:64.1 A (West 1986); Mich.Comp.Laws Ann. § 750.529 (West 1968); Minn. Stat.Ann. § 609.245 (West Supp.1989); N.H.Rev.Stat.Ann. § 636:1 III.(b) (1986); N.J.Stat.Ann. §§ 2C:15–1 b., 2C:11–1 c. (West 1982); N.Y.Penal Law § 160.10 2.(b) (Consol.1984); Okla.Stat.Ann. tit. 21, § 801 (West 1983); Or.Rev.Stat. § 164.405(1)(a) (1987); Utah Code Ann. § 76–6–302(1)(a) (1978); Wash.Rev.Code § 9A.56.200(1)(b) (1987); W.Va.Code § 61–2–12 (Repl.Vol.1989); Wisc.Stat.Ann. § 943.32(2) (West.1982); Wyo.Stat. § 6–2–401(c)(ii) (1977).

When a victim or witness reasonably believes that the assailant is armed with an objectively dangerous weapon, a number of statutes either create a presumption or allow that testimony to be prima facie evidence that the defendant was so armed. *See, e.g.,* Ala.Code § 13A–8–41(b) (Repl.Vol.1982); Colo.Rev.Stat. § 18–4–302(2) (1986); Conn.Gen.Stat. § 53a–134 (1987); Me.Rev.Stat.Ann. tit. 17–A, §§ 651(E), 2(9)(C), (D) (1983); N.Y.Penal Law § 160.15 A.4 (Consol. 1984).·

*generally* Annotation, *Robbery by Means of Toy or Simulated Gun or Pistol,* 81 A.L.R.3d 1006 (1977).

The United States Supreme Court in *McLaughlin v. United States,* 476 U.S. 16, 106 S.Ct. 1677, 90 L.Ed.2d 15 (1986), interpreted the federal bank robbery statute, 18 U.S.C.A. § 2113(d) (West 1984). The Court held that

[t]hree reasons, each independently sufficient, support the conclusion that an unloaded gun is a "dangerous weapon." First, a gun is an article that is typically and characteristically dangerous; the use for which it is manufactured and sold is a dangerous one, and the law reasonably may presume that such an article is always dangerous even though it may not be armed at a particular time or place. In addition, the display of a gun instills fear in the average citizen; as a consequence, it creates an immediate danger that a violent response will ensue. Finally, a gun can cause harm when used as a bludgeon.

476 U.S. at 17–18, 106 S.Ct. at 1678, 90 L.Ed.2d at 16 [footnote omitted]. Thus, the Court seems to have adopted both the objective and subjective approaches.

Relying on the subjective approach partially adopted in *McLaughlin* the United States Court of Appeals for the Ninth Circuit recently held that a toy gun is a "dangerous weapon" under § 2113(d). *See United States v. Martinez–Jimenez,* 864 F.2d 664 (9th Cir.1989).

The subjective approach has been adopted in a number of decisions in states where the aggravated robbery statute

---

The fourth type of statute, like Maryland's aggravated robbery statute (Art. 27, § 488), provide no indication as to what approach is to be taken in defining a dangerous or deadly weapon. *See, e.g.,* 18 U.S.C.A. § 2113(d) (West 1984) (federal bank robbery statute); Ill. Ann.Stat. ch. 38, para. 18–2(a) (Smith–Hurd Supp.1988); Kan.Stat. Ann. § 21–3427 (1981); Ky.Rev.Stat.Ann. § 515.020(1)(b) (Michie Repl.Vol.1985); Mass.Ann.Laws ch. 265, § 17 (Law.Co-op.1980); Miss. Code Ann. § 97–3–79 (Supp.1988); Nev.Rev.Stat.Ann. § 193.165 (Michie 1986); N.C.Gen.Stat. § 14–87(a) (1986); S.C.Code Ann. § 16–11–330 (Law.Co-op.1985); Tenn.Code Ann. § 39–2–501(a) (Repl. Vol.1982); Vt.Stat.Ann. tit. 13, § 608(b) (1974).

does not specify which approach is to be taken. *See, e.g., State v. Davis,* 227 Kan. 174, 605 P.2d 572 (1980) (also discusses, with approval, the objective approach); *Commonwealth v. Sanders,* 736 S.W.2d 338 (Ky.1987); *Commonwealth v. Nicholson,* 20 Mass.App.Ct. 9, 477 N.E.2d 1038, *cert. denied,* 395 Mass. 1103, 481 N.E.2d 197 (1985); *Anderson v. State,* 96 Nev. 633, 614 P.2d 540 (1980).

A contrary approach is taken by other cases construing similar statutes. For example, in *Cooper. v. State,* 201 Tenn. 149, 297 S.W.2d 75 (1956), the Supreme Court of Tennessee held that a toy pistol is not a "deadly weapon" under that state's armed robbery statute. The court noted that were it to adopt the subjective approach, then the "use of [a] finger or hand in [the robber's] pocket so as to simulate the possession and threat to use a pistol" would constitute the use of a deadly weapon. 201 Tenn. at 152, 297 S.W.2d at 77. The court declined the invitation to adopt the subjective approach, reasoning that the Tennessee legislature intended to "prevent the kind of violence which often attends the use of a deadly weapon in the perpetration of robbery." *Id.* at 153, 297 S.W.2d at 77. Thus, the toy pistol was not a deadly weapon. *See also, Brown v. State,* 220 Tenn. 709, 713–714, 423 S.W.2d 493, 495 (1968).

Other decisions have followed a similar approach. *See, e.g., People v. Skelton,* 83 Ill.2d 58, 46 Ill.Dec. 571, 414 N.E.2d 455 (1980); *Commonwealth v. Howard,* 386 Mass. 607, 436 N.E.2d 1211 (1982); *Duckworth v. State,* 477 So.2d 935 (Miss.1985); *State v. Allen,* 317 N.C. 119, 343 S.E.2d 893 (1986); *State v. Tasco,* 292 S.C. 270, 272, 356 S.E.2d 117, 118 (1987) (Ness, C.J., concurring); *State v. Parker,* 139 Vt. 179, 423 A.2d 851 (1980).

Given this state of affairs, we must return to § 488 and attempt anew to divine the legislative purpose embodied in the words "dangerous or deadly weapon." Section 488 was enacted in 1927, as Chapter 457 of the Acts of that year. The bill's title tells us only that the measure was intended

"to prescribe increased penalties for the offense of Robbery with a dangerous or deadly weapon." The text of § 488 is unchanged from the 1927 language. And we have been unable to unearth any contemporary direct legislative history, such as committee or commission reports, material from legislative hearings, or the like. *Cf. McLaughlin,* 476 U.S. at 18 n. 3, 106 S.Ct. at 1678 n. 3, 90 L.Ed.2d at 18 n. 3. (Legislative history indicated that "Congress regarded incitement of fear as sufficient to characterize an apparently dangerous article ... as 'dangerous' within the meaning of the [federal bank robbery] statute").

Under these circumstances, we turn to the words of the statute. "Obviously, 'what the legislature has written in an effort to achieve a goal is a natural ingredient of analysis to determine that goal.'" *Wynn v. State,* 313 Md. 533, 539, 546 A.2d 465, 468 (1988) (quoting *Kaczorowski v. City of Baltimore,* 309 Md. 505, 513, 525 A.2d 628, 632 (1987)). The dictionary informs us that "dangerous" bears such meanings as "full of danger of risk; ... perilous; ... hazardous ... able or likely to cause physical injury...." *The Random House Dictionary of the English Language* 505 (2d ed. 1987). "Deadly" is defined as, among other things, "causing or tending to cause death; fatal; lethal...." *Id.* at 512.[6] These commonly understood meanings of the word do not suggest that the legislative goal in adopting what is now § 488 had to do with concern about intimidation of the victim. Fear, after all, is one of the basic elements of simple robbery. *State v. Gover,* 267 Md. 602, 606, 298 A.2d 378, 380–381 (1973). *See also* W. LaFave & A. Scott, *Substantive Criminal Law* § 8.11(d), at 445 (1986) ("Robbery requires that the taking be done by means of violence or intimidation"); Casenote, *Unloaded Pistol as a Dangerous Weapon Within the Robbery Statute,* 17 Md.L.Rev. 257, 262 (1957) (criticizing *Hayes v. State, supra* ).

---

**6.** These definitions have not changed since § 488 was first enacted. *See* 3 *A New English Dictionary* 27, 62 (Oxford 1897).

Nor do the words "dangerous or deadly" suggest that the legislature was attempting to impose increased penalties in circumstances in which use of an apparent weapon is likely to exacerbate an already bad situation, as by inducing the use of a real defensive weapon by the victim or bystanders. Other language would be more apt for that purpose. Indeed, the existence of numerous statutes either embodying a subjective test or explicitly addressing the use of an apparent (as opposed to an actual) dangerous or deadly weapon strongly suggests that legislatures use carefully crafted language when they intend to take that route. *See supra,* note 5. We believe the Maryland General Assembly would have followed a similar course had it intended a similar result.

The offense described in § 488, after all, is not a new substantive crime; it is common law or simple robbery aggravated by use of a dangerous or deadly weapon. *Whack,* 288 Md. at 140–141, 416 A.2d at 266. We believe the legislative purpose in prescribing an enhanced penalty for armed robbery was aimed at deterring those capable of actually inflicting death or serious bodily injury. The use of a toy gun "adds nothing extra to the bare fact that [the robber] intimidated the victim." W. LaFave & A. Scott, *supra,* § 8.11(f), at 456.[7]

This construction of the statute, and its adoption of the objective approach, is fully consistent with the legislative language. Moreover, it avoids possible absurd results. For example, under the subjective view, a robber whose finger is extended in his or her jacket pocket to simulate a gun barrel, and who intimidates the victim by claiming to possess a gun, could be convicted of armed robbery. Although

---

7. Should the General Assembly disagree with our reading of the legislative purpose of § 488, or should it now desire to pursue a different goal, it is free to do so. Should it decide to do so, it could look to some of the statutes listed in the second and third paragraphs of note 5, *supra.*

that robber would be guilty of robbery—*see Dixon v. State,*
302 Md. 447, 488 A.2d 962 (1985)—it would be ridiculous to
convict this individual of robbery with a dangerous or
deadly weapon. *See* Casenote, *supra,* 17 Md.L.Rev., at 261.

Finally, the construction we adopt is consistent with our
view of strict construction of criminal statutes, as we ex-
plained it in *Wynn,* 313 Md. at 539–540, 546 A.2d at 468–
469. And it fits what we know about the context within
which § 488 was enacted. One aspect of context is the
"relationship [of the statute under consideration] to earlier
and subsequent legislation...." *Wynn,* 313 Md. at 539,
546 A.2d at 468 (quoting *Kaczorowski,* 309 Md. at 515, 525
A.2d at 632–633). On the statute books when Chapter 457,
Acts of 1927, was enacted, was the predecessor to Article
27, § 36. In 1927, that provision was Article 27, § 42, and it
read thus:

> Every person who shall wear or carry any pistol, dirk-
> knife, bowie knife, slung shot, billy, sand club, metal
> knuckles, razor, or any other dangerous or deadly weapon
> of any kind whatsoever (pen knives excepted) concealed
> upon or about his person, and every person who shall
> wear or carry any such weapon openly with the intent or
> purpose of injuring any person in any unlawful manner,
> shall be guilty of a misdemeanor.

This statute gives us an indication of what sort of imple-
ments the legislature believed to be dangerous or deadly
weapons. It is apparent that the term encompasses only
those devices that are inherently dangerous or deadly or
that may be used with dangerous or deadly effect. *See
Walker v. State,* 53 Md.App. 171, 204, 452 A.2d 1234, 1251
(1982), *cert. denied,* 296 Md. 63 (1983). As in the case of
§ 488, we have held that an unloaded pistol is covered.
*Wallace v. Warden,* 226 Md. 670, 174 A.2d 435 (1961). So is
a starter's pistol. *Jackson, supra,* 231 Md. 591, 191 A.2d
432. But § 36 was not aimed at minimizing intimidation of
victims. A victim or potential victim cannot be intimidated

by the carrying of a concealed weapon. It was designed to penalize those who had in their possession, with evil intent, instruments that were likely to be used to inflict serious or deadly injury. In short, the objective approach to determining what was dangerous or deadly was embodied in this statute. It is not unreasonable to assume that the legislature that adopted what is now § 488 transported into that statute the "dangerous and deadly" language of old § 42, intending it to carry the same meaning as it then bore.[8]

We hold, therefore, that for an instrument to qualify as a dangerous or deadly weapon under § 488, the instrument must be (1) designed as " 'anything used or designed to be used in destroying, defeating, or injuring an enemy, or as an instrument of offensive or defensive combat,' " *Bennett*, 237 Md. at 214–215, 205 A.2d at 394; (2) under the circumstances of the case, immediately useable to inflict serious or deadly harm (*e.g.*, unloaded gun or starter's pistol useable as a bludgeon); or (3) actually used in a way likely to inflict that sort of harm (*e.g.*, microphone cord used as a garrote).[9]

The lightweight plastic toy pistol in this case does not qualify. It obviously does not fall within category (1). There is no evidence to suggest that it was of sufficient

---

**8.** The nonviability of the subjective or intimidation test under old § 42 and present § 36 is plain. One who carries a lightweight plastic toy gun could scarcely commit the offense of carrying a concealed dangerous or deadly weapon. One who carries such a toy openly could hardly commit the crime of wearing openly a dangerous or deadly weapon with intent to harm. Were the contrary true, our juvenile courts could be overwhelmed with new business.

A more recently-adopted law, Art. 27, § 36A, proscribes the carrying or possessing of "any rifle, knife, or deadly weapon on public school property." Section 36A was enacted by Ch. 614, Acts of 1971, the title to which directs that the law is "to be under the new subheading 'Carrying Deadly Weapons on Public School Property.' " This statute is another indication of the legislature's use of an objective test for the definition of deadly weapons.

**9.** To the extent our prior decisions, or those of the Court of Special Appeals, applied an "intimidation" or subjective test as an alternative basis for affirming armed robbery convictions, they are disapproved.

weight or heaviness to permit the conclusion that it was within category (2). Its use was simply by way of displaying its butt to the victim while the weapon was in Brooks's trouser waistband; this excludes it from category (3).

## III.

For the reasons stated, we must reverse the judgment of the Court of Special Appeals with directions to remand the case to the Circuit Court for Baltimore City. There need be no new trial, however. When the jury convicted Brooks of armed robbery, it necessarily convicted him of simple robbery as well. *Whack,* 288 Md. at 140–141, 416 A.2d at 266. *See also supra,* note 2. We shall further direct that the judgment in the trial court be vacated, that a verdict of guilty of robbery be entered, and that Brooks then be sentenced on the robbery conviction. *E.g., United States v. Dickinson,* 706 F.2d 88, 92–93 (2d Cir.1983) (when there is insufficient evidence to convict of a greater offense, appellate court may reverse conviction and enter judgment on a lesser-included offense); *Dickenson v. Israel,* 482 F.Supp. 1223, 1225–1226 (E.D.Wis.1980), *aff'd,* 644 F.2d 308 (7th Cir.1981) (same); *State v. Grant,* 177 Conn. 140, 147–149, 411 A.2d 917, 920–921 (1979) (same); *see Morris v. Mathews,* 475 U.S. 237, 246–247, 106 S.Ct. 1032, 1038, 89 L.Ed.2d 187, 197 (1986) (defendant's jeopardy-barred conviction may be cured by reducing it to a conviction of a lesser-included offense which is not jeopardy-barred).

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO VACATE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AND TO REMAND TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.