528 A.2d 498

**Willie Earl WRIGHT**

v.

**STATE of Maryland.**

**No. 1561, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

July 15, 1987.

Certiorari Denied Dec. 9, 1987.

**216**

Julia Doyle Bernhardt, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief) Baltimore, for appellant.

Ronald M. Levitan, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, Andrew L. Sonner, State's Atty. for Montgomery County and John J. McCarthy, Asst. State's Atty. for Montgomery County, on the brief, Rockville), for appellee.

Argued before WILNER, WEANT, and ALPERT, JJ.

WEANT, Judge.

Appellant, Willie Earl Wright, was convicted by a jury in the Circuit Court for Montgomery County of robbery and

robbery with a deadly weapon for which he was sentenced to eight years imprisonment.

Trial testimony indicated that appellant accosted the victim one night in a parking lot outside of her apartment building. He was wielding a plastic toy pistol. The victim was not convinced that the toy was a real gun; she became enraged and threw a cup of Coke in appellant's face. Appellant then grabbed her purse out of the top of a grocery bag and ran away. He was later identified in a line-up and charged.

On appeal we are presented with these questions:

1. Did the trial court err in instructing the jury on assumption of a false name and consciousness of guilt?

2. Did the trial court err in refusing to send a videotaped exhibit to the jury room or in the alternative, to allow the jurors to view the videotape as often as they wished or to stop the action of the tape?

3. Was a plastic toy pistol that the victim did not believe was a real gun a dangerous and deadly weapon within the meaning of Md.Code Art. 27, § 488?

4. Did the trial court err in denying Appellant's motion for judgment of acquittal where the evidence was insufficient to show that the taking of property was done by violence or intimidation?

### 1.

Appellant contends that the trial court committed reversible error when it instructed the jury that "the assumption of a false name may be indicative of a consciousness of guilt." The trial court further instructed, "Although such conduct is not sufficient, in itself, to establish guilt, the fact of an accused['s] assumption of a false name is admissible as evidence of consciousness of guilt." The trial court concluded by saying the determination of that fact "is a matter solely within your province."

This instruction was given because a police officer had testified that, while undercover, he had asked appellant his

name. Appellant replied, "Vincent Burris." Appellant argues that the instruction was improper because "the probative value of evidence of flight or the giving of a false name is doubtful." Because there was no objection to the false-name evidence at trial, however, appellant's argument concerning probative value of the evidence is waived. Md.Rule 1085.

■ Appellant properly preserved an objection to the court's failure to include in its instruction concerning the giving of 'a false name a statement that a person might assume a false name for innocent reasons or reasons unrelated to a particular criminal case. The State argues that instructions similar to the ones given by the trial judge have been approved by the appellate courts in Maryland and that if there was any error it was harmless beyond a reasonable doubt.

We agree. While it is better practice to mention the possibility of innocent motives in assuming a false name or in fleeing from police, we have found no authority demanding that addition.

2.

Appellant contends that the trial court erred when it refused to let the jury take a video tape of seven line-up sessions into the jury room for viewing during deliberations. The court was aware of several unrelated line-up sessions included on the tape in which appellant participated. Only one session was pertinent to the instant case. The court ruled that to allow the jury to view the tape again and again would unduly emphasize that evidence.

■ Appellant relies on the provision in Md.Rule 4–326(a) (which says, among other things) that "[U]nless the court for good cause shown orders otherwise, the jury may also take ... exhibits which have been admitted into evidence ..." into the jury room. As we see it, the "good cause" mentioned in that rule encompasses the reasons articulated by the trial court. We are not persuaded that the trial court was clearly wrong.

### 3.

Appellant contends that the trial court erred by refusing to rule that a plastic gun, which was used during the incident, does not qualify as a dangerous or deadly weapon. We recognize the issue to be whether the trial court erred by allowing that determination to go to the jury when (1) the evidence showed that the "weapon" was, in fact, a toy gun made of plastic, (2) the victim did not believe the toy was a real gun, and 3) the victim was not intimidated by the toy. If appellant is correct, his sentencing under Md. Ann. Code art. 27, § 488, Robbery with a Deadly Weapon, was improper.

■ A weapon for purposes of Md. Ann. Code art. 27, § 488 (hereinafter § 488) has been broadly defined as anything used or designed to be used in destroying, defeating, or injuring an enemy or as an instrument of offensive or defensive combat. *Bennett and Flynn v. State,* 237 Md. 212, 205 A.2d 393 (1964). The weapon used for purposes of § 488 need not be a handgun or even a firearm. *See Whack v. State,* 288 Md. 137, 416 A.2d 265 (1980), *Couplin v. State,* 37 Md.App. 567, 378 A.2d 197 (1977). The dangerousness of a weapon is determined not only by its design, construction, or purpose but also by its capability to be used in such a way as to cause injury or death. *Bennett,* 237 Md. at 215, 205 A.2d at 394. Thus, a taxi cab's microphone cord used as a garrote was deemed to be a dangerous or deadly weapon under § 488. *Id.* at 216, 205 A.2d at 395.

The Court of Appeals in *Whack,* 288 Md. 137, 416 A.2d 393 (citing *Hayes v. State,* 211 Md. 111, 115–16, 126 A.2d 576 (1956)), said that § 488 "was intended to encompass devices for intimidation regardless of an ability to execute the implied threat." The *Whack* case involved the use of a real handgun.

In discussing use of an unloaded pistol in a case involving the predecessor of § 488, *see* Md. Ann. Code art. 27, § 574A (1951), the *Hayes* Court said

> The Maryland statute ... predicates the greater penalty attached to the use of a dangerous or deadly weapon upon the means employed in the intimidation. So long as there is an intent to rob by that means, it is unnecessary to find an intent or ability to execute the implied threat in the event of resistence. [Cites omitted.] Nor need it be shown that the person assailed was actually put in fear, if the means employed are calculated to instill fear in the heart or mind of a reasonable man.

*Id.* at 115–16, 126 A.2d at 578–79.

In the *Hayes* case there was no doubt that the unloaded gun was a dangerous or deadly weapon in itself. The Court in that case mentioned that the gun could be used as a bludgeon and, therefore, it qualified as a dangerous weapon under the statute. We note also that upon examination of the toy gun in the case *sub judice* it was obviously not one "calculated to instill fear in the heart or mind of a reasonable man." It was a poor replica of a revolver, made of lightweight plastic with its cylinder missing.

This Court in *Crum and Dunbar v. State*, 1 Md.App. 132, 134, 227 A.2d 766, 767 (1967), said that a showing of 1) intimidation and 2) apparent ability is sufficient to indicate that a weapon is dangerous. There was no showing of either in the instant case. The record reveals that the victim was not intimidated. Her testimony indicated that she thought the toy gun looked like a small, three-inch piece of pipe. She further testified that when she threw her soft drink on appellant she was "pretty tired" and "pretty mad." She said she watched the robber run off "for a couple of minutes ... down the hill and around the corner." She also said that when she went inside after the incident she telephoned a friend. She said "I talked to my girlfriend for a while. I started to empty the bag. The minute I picked up my purse I knew my wallet wasn't in there." There is simply no evidence that the victim was intimidated by the toy gun. Nor was there an apparent ability, from the victim's point of view, to use the toy as a dangerous

weapon. Clearly, the victim did not react to the incident as a person intimidated by the likelihood of great bodily harm.

■ When the trial court was asked to rule on a motion for judgment on the charge of robbery with a deadly weapon, the trial court acknowledged that "it was a close question" and denied the motion. The court reasoned that whether the weapon in this case was dangerous was a matter for the jury to decide. We hold that the particular plastic toy gun under the facts of this case is not a dangerous weapon as a matter of law. The trial court should not have let that determination go to the jury.

To determine whether a toy or simulated gun can be considered a dangerous weapon by a trier of fact, some courts use a subjective approach and look to what the victim believed. Other courts use an objective approach and compare the device to the criminal statute in question to determine whether the device fits the requirements of "dangerous weapon." *See* Robbery by Means of Toy or Simulated Gun or Pistol, 81 A.L.R.3d 1006 (1977).

Our understanding of the *Hayes* case is that the Court of Appeals focuses on the device that is alleged to be a dangerous weapon. The Court applies a common-sense test to determine whether the weapon is dangerous. Proof of substance, size, and weight of a device can show that a device could be used as a bludgeon. *See Jackson v. State*, 231 Md. 591, 191 A.2d 432 (1963) (wherein the Court cites *People v. Ward*, 84 Cal.App.2d 357, 190 P.2d 972, 974 (1948)). There are many cases in other jurisdictions that conclude a metal toy pistol is a dangerous weapon in that it can be used as a bludgeon. *See* Annot., 81 A.L.R.3d 1006 (1977).

In *People v. Skelton*, 83 Ill.2d 58, 46 Ill.Dec. 571, 414 N.E.2d 455 (1980), the Supreme Court of Illinois addressed the question of whether a plastic toy gun met the criteria for "dangerous weapon." That court stated that in most cases the determination was a question for the factfinder but when "the character of the weapon is such as to admit

of only one conclusion, the question becomes one of law for the court." *Id.* 46 Ill.Dec. at 574, 414 N.E.2d at 458. The Court said that the device was 1) unlike a starter pistol, 2) too small and light to be used as a bludgeon, and 3) not capable of firing pellets like a pellet gun and at most it was no more dangerous than a person's finger which can be used to poke out a victim's eye. The Court concluded, "It is simply not, in our opinion, the type of weapon which can be used to cause the additional violence and harm which the greater penalty attached to armed robbery was designed to deter." *Id.* 46 Ill.Dec. at 574, 414 N.E.2d at 458.

In *State v. Byrd*, 385 So.2d 248 (La.1980), the Supreme Court of Louisiana held that a person using a toy gun in a robbery was not guilty of armed robbery in a case in which the victim knew the gun was a toy and the victim's "subjective reaction indicate[d] he did not perceive any likelihood of great bodily harm." *Id.* at 250.

The undisputed facts of the *Byrd* case were stated as follows:

> Defendant ordered a single piece of fried chicken at the side window of a restaurant. When the employee rang up the sale on the cash register and asked for 57 cents, defendant produced a toy pistol from his pocket and held it up in the air, demanding all of the money in the register. The employee stated there was no money, and defendant grabbed the piece of chicken and began to walk away. However, the employee grabbed the chicken back and closed the window on defendant, who then left the window.
>
> Two policemen, who happened to observe the incident from across the street (and were not called by the employee), stopped defendant and searched him, finding the toy pistol.

*Id.* at 249–50. The *Byrd* Court said that the facts did not support a reasonable conclusion that the toy was used in a manner likely to produce bodily harm and that all the elements to prove armed robbery were not proven beyond a reasonable doubt. *Id.* at 250.

In the instant case the robber told the victim that he had a gun and that he would shoot her if she did not drop her bag of groceries. The victim believed that the toy gun was a small, 3–inch pipe. She threw her cup of Coke in appellant's face because she was angry. The facts do not support a conclusion that the toy was used in a manner which would qualify it as a dangerous weapon.

4.

Appellant's final contention is without merit. We find no error in the court's decision that evidence of force, threat, or violence was introduced by the State.

JUDGMENT AS TO COUNT 1, REVERSED; JUDGMENT AS TO COUNT 3 VACATED AND CASE REMANDED FOR IMPOSITION OF SENTENCE. COSTS TO BE PAID BY MONTGOMERY COUNTY.